IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SUSAN L. FORD,                    )
                                  )
        Plaintiff,                )
                                  )
        v.                        )       1:06CV00453
                                  )
FIRST AMERICAN FLOOD DATA         )
SERVICES, INC.,                   )
                                  )
        Defendant.                )

MEMORANDUM OPINION

OSTEEN, District Judge

        Plaintiff Susan L. Ford brings this action against Defendant
First American Flood Data Services, Inc. ("First American"),[1]
alleging negligence and breach of a contractual duty owed to USAA
Federal Savings Bank ("USAA") and Plaintiff.  First American
seeks to dismiss the complaint for failure to state a claim upon
which relief can be granted pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure.  For the reasons stated below,
the court will grant Defendant's motion.

---

        [1] The proper name of Defendant is First American Real Estate
Solutions of Texas, L.P. (doing business as, "First American
Flood Data Services").  (Corporate Disclosure Statement of June
12, 2006.)

## I. FACTUAL BACKGROUND

The following facts are presented in the light most favorable to Plaintiff.[2]

In July 2002, Plaintiff purchased a parcel of improved real property (the "Property") located in Durham, North Carolina. Plaintiff financed the purchase by entering into a mortgage loan with USAA, a lender regulated by the Flood Disaster Protection Act of 1973 (the "Act"). The Act requires flood insurance for the life of mortgage loans secured by improved real property located within a Special Flood Hazard Area ("SFHA"). See 42 U.S.C. § 4012a (2006). Therefore, before making or amending any loan secured by improved real property, lenders regulated under the Act must determine whether the property is located in an area that requires flood insurance and see that it is obtained as needed. See § 4012a(b)(1). The Act provides that the lender may allow a third party to make the determination so long as that third party guarantees an accurate result. See 42 U.S.C. § 4104b(d) (2006).

First American is a company that provides flood zone determinations for lenders, such as USAA, who are required to comply with the Act. Before Plaintiff closed on her loan for the Property, pursuant to a contract between First American and USAA, First American performed a flood zone determination on the

---

[2] In considering a motion to dismiss, the court must construe the facts in the light most favorable to Plaintiff. See Jenkins v. McKeithen, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969); Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994).

Property and concluded that it was not located within an SFHA. As such, Plaintiff closed on her loan believing the property did not require flood insurance. First American also conducted two additional flood zone certifications on the Property for USAA, one prior to Plaintiff's refinancing a mortgage loan in November 2002 and the other in conjunction with a home equity loan in July 2004. Plaintiff paid a fee of $17.00 each time First American conducted a flood zone determination. In the November 2002 determination, First American again certified that the Property was not located in an SFHA. However, the 2004 determination certified that the Property had been located in an SFHA since Plaintiff had purchased the property and, therefore, required flood insurance. As a result of the 2004 determination, Plaintiff was required to purchase flood insurance on the Property through the Federal Emergency Management Agency's National Flood Insurance Program, and she will be required to pay the insurance premiums for the remaining life of her mortgage loans. Had Plaintiff known the property was situated in an SFHA before closing on the loan, she would not have purchased the property.

Plaintiff brings this action in federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff alleges that First American was negligent in twice incorrectly certifying that the Property was not located in an SFHA and that First American's negligence was the direct and proximate cause of her monetary loss. Plaintiff further alleges

3

that by making incorrect determinations, First American breached its contract with USAA, a contract to which Plaintiff was a third-party beneficiary. As a result, Plaintiff seeks compensation from First American for the flood insurance premiums she has had to pay since July 2004 and will be required to pay for the life of the mortgage loans. First American seeks to dismiss Plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, arguing that Plaintiff has no cause of action against First American that would entitle her to relief under any theory of law.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a challenged pleading, but it does not resolve disputes surrounding the facts or the merits of a claim. <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992). A court must determine only if the pleading at issue fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The key issue is not whether the plaintiff will prevail on her claim, but whether she is entitled to offer evidence in support of the claim. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir. 1989). A court should dismiss a case on Rule 12(b)(6) grounds "only in very limited circumstances," <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989), specifically, only if "it appears beyond doubt that the plaintiff

4

can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In determining whether to dismiss under Rule 12(b)(6), the pleading must be liberally construed in the light most favorable to the nonmoving party, and the allegations made therein must be taken as true.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1849 (1969).

## III. **ANALYSIS**

In her complaint, Plaintiff alleges state law negligence and breach of contract claims against First American arising out of its failure to correctly determine and notify Plaintiff that the Property was located in an SFHA as required by the Act.  First American now seeks to dismiss these claims, arguing that even if the allegations are true, a borrower has no legal right to bring a private action against a flood zone determination company under either the Act or any common law theory.

Plaintiff's claims are in federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Therefore, according to the <u>Erie</u> doctrine, this court must apply North Carolina law to the issues presented.  <u>See</u> <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938) ("Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State.").  When applying state law in a diversity case, a federal court has "an obligation to interpret the law in accordance with the [highest court of the state], or where the law is unclear, as

5

it appears that the [highest court of the state] would rule." <u>Wells v. Liddy</u>, 186 F.3d 505, 527-28 (4th Cir. 1999) (citing <u>Liberty Mut. Ins. Co. v. Triangle Indus.</u>, 957 F.2d 1153, 1156 (4th Cir. 1992)) (citation omitted).  No North Carolina court has yet ruled upon the issue of whether a borrower has a private state law cause of action against either a lender or a third-party flood zone determination company based on a violation of the Act.  Therefore, in deciding whether to dismiss Plaintiff's claims, this court must predict whether the Supreme Court of North Carolina would recognize such claims.

The overwhelming majority of both federal and state courts refuse to allow either private federal or common law claims arising out of violations of the Act.  The Fourth Circuit has clearly held that there is neither an express nor an implied federal private right of action by a borrower for an alleged violation of the flood zone determination and notification requirements of the Act.  <u>See Lukosus v. First Tenn. Bank Nat'l Ass'n</u>, 89 Fed. Appx. 412, 412 (4th Cir. 2004) (affirming lower court finding that a purchaser has no express or implied federal cause of action based on the failure to provide proper notice as required by the Act); <u>Arvai v. First Fed. Sav. & Loan Ass'n</u>, 698 F.2d 683, 684 (4th Cir. 1983) (affirming lower court ruling disallowing private action for damages under the Act based on congressional intent and precedent); <u>Cruey v. First Am. Flood Data Servs., Inc.</u>, 174 F. Supp. 2d 525, 528-32 (E.D. Ky. 2001) (extending the finding that there is no implied right of action

for borrowers under the Act to a suit against a third-party flood hazard determination company based primarily on legislative intent).  Federal courts in every other circuit to consider the issue have reached the same result, usually reasoning that Congress did not intend to allow a private cause of action arising from a violation of the Act.  See Mid-America Nat'l Bank of Chi. v. First Sav. & Loan Ass'n of S. Holland, 737 F.2d 638, 642-43 (7th Cir. 1984) (refusing to create a federal private cause of action where Congress did not intend such an action); Hofbauer v. Nw. Nat'l Bank of Rochester, Minn., 700 F.2d 1197, 1199-01 (8th Cir. 1983) (holding that based upon the legislative intent behind relevant portions of the Act, there is no implied federal right of action for damages arising from violations of those sections); Till v. Unifirst Fed. Sav. & Loan Ass'n, 653 F.2d 152, 157-61 (5th Cir. 1981) (examining various methods of statutory construction including legislative intent and holding that there is no federal private right of action in favor of borrowers under the Act).

In addition to disallowing private federal claims under the Act, some federal courts have also refused to allow common law and other state law claims by borrowers under the Act.  See, e.g., Lukosus, 89 Fed. Appx. 412 (affirming lower federal court order finding that no state law cause of action arises under Virginia law for failure to provide notice as required under the Act); Peal v. N.C. Farm Bureau Mut. Ins. Co., 212 F. Supp. 2d 508, 515-17 (E.D.N.C. 2002) (holding that plaintiff's state law

breach of contract and extra-contractual claims against his insurer were preempted by the Act). Most of these federal courts, however, have determined that whether a state law claim based on the violation of a federal statute may be brought is a matter of state law for state courts to decide or for a federal court exercising diversity jurisdiction to decide pursuant to state law. See Wentwood Woodside I, L.P. v. GMAC Commercial Mortgage Corp., 419 F.3d 310, 323 (5th Cir. 2005) (predicting that Texas law would be consistent with the federal judiciary in not allowing a private cause of action for negligence per se arising from a violation of the Act); Hofbauer, 700 F.2d at 1201 (holding that although a federal statute may create a standard of conduct the violation of which amounts to a state law claim, whether such a claim exists is a question best left entirely to state courts); Till, 653 F.2d at 161-62 (holding that state law claims depend upon state law and remanding the plaintiff's claims to state court); Callahan v. Countrywide Home Loans, Inc., No. 06-105, 2006 U.S. Dist. LEXIS 51217, at *6-7 (N.D. Fla. July 26, 2006)[3] (noting that state courts may choose not to allow state law claims based on the violation of a federal statute if it would upset the federal scheme and dismissing the plaintiff's

---

[3] While the court generally prefers not to cite unpublished opinions, the factual background, procedural history, and holding of this case are similar enough to the issues at hand to warrant mentioning the case as additional support for this court's decision.

claim because the Florida Supreme Court would likely not allow such a claim due to federalism concerns).

When state courts have addressed the issue, they have almost uniformly decided not to allow private causes of action by borrowers based on violations of the Act, usually reasoning that legislative intent and principles of federalism and separation of powers caution against it. See, e.g., Dollar v. Nationsbank of Ga., N.A., 534 S.E.2d 851, 853 (Ga. Ct. App. 2000) (refusing to allow a state law claim by borrower against lender holding that because the flood zone determination was made for the benefit of lender, lender had no duty to borrower under the Act and thus borrower did not justifiably rely on lender's representations); Jack v. City of Wichita, 933 P.2d 787, 793 (Kan. Ct. App. 1997) (holding that the Act does not create a duty supporting a negligence claim and that the borrower-lender relationship is not the kind of special relationship which imposes a duty); Lehmann v. Arnold, 484 N.E.2d 473, 481 (Ill. App. Ct. 1985) (ruling that legislative intent and federalism concerns prohibit state law claims for Act violations); R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n, 315 N.W.2d 284, 290 (N.D. 1982) (refusing to recognize a state law cause of action for a violation of the Act, reasoning that separation of powers and federalism concerns direct against adopting a federal statute as the standard of care in a negligence case when the statute allows no express or implied private right of action); Pippin v. Burkhalter, 279 S.E.2d 603, 604 (S.C. 1981) (holding that there can be no implied

9

right of action in favor of the purchaser under the Act because the Act was intended to protect a class of loans and not an outright purchaser).

Only one state court has ruled on the precise issue of whether to allow state law claims by a borrower against a third-party determination company for a violation of the Act.  In Laurent v. Flood Data Servs., Inc., plaintiff-purchasers asserted various common law claims against First American, the same defendant in this case, arising from allegedly incorrect flood zone determinations First American performed on behalf of the lender pursuant to the Act.  Laurent v. Flood Data Servs., Inc., 766 N.E.2d 221, 223, 225-26 (Ohio Ct. App. 2001).  Affirming the lower court's grant of summary judgment to First American on the plaintiffs' breach of contract claim, the Ohio Court of Appeals held that the plaintiffs were not in contractual privity with First American, that no contractual duty had arisen between the plaintiffs and First American despite the plaintiffs' relationship with the lender, and that the flood zone determination had been performed solely to ensure the lender's compliance with the Act.  Id. at 225-26.  Further, the court affirmed the grant of summary judgment on plaintiffs' negligence and negligent misrepresentation claims finding in part that only a "highly attenuated" relationship existed between First American and the plaintiffs and thus that First American owed no duty to the plaintiffs upon which to base either claim.  Id. at 227-28.

Plaintiff is unable to cite a single case in which either a

10

federal or a state court has allowed a state law cause of action based on a violation of the Act. Instead, Plaintiff merely argues that the authority Defendant cites is distinguishable because it either does not address the precise issue before the court or is from a non-controlling jurisdiction. It is this court's task, however, to determine, in the absence of authority directly on point, whether the Supreme Court of North Carolina would likely allow a private state law cause of action based on a violation of the Act.

Plaintiff next argues that her claims are not based on violations of the Act but simply on common law negligence and breach of a third-party beneficiary contract. This argument likewise cannot prevail. Plaintiff's claims arose out of First American's failure to correctly determine that the Property was located in an SFHA. The Act provides for and regulates third-party flood zone determinations to ensure that lenders comply with its flood insurance provisions. Therefore, any duty First American owed to Plaintiff, either from the contract between First American and USAA or from an ordinary negligence standard, would have arisen from the Act, a breach of which would violate the Act. For this reason, Plaintiff's claims are based directly on alleged violations of the Act.

Because courts have clearly established that there is no express private cause of action for a borrower under the Act, the question for this court is whether North Carolina would nevertheless recognize a private state law claim based on an

11

alleged violation. In <u>Cort v. Ash</u>, the Supreme Court set forth a four-factor test for determining when a court may imply a private cause of action from a federal statute.[4] <u>Cort v. Ash</u>, 422 U.S. 66, 78, 95 S. Ct. 2080, 2087-88 (1975). However, more recently, the Court's decisions indicate that the focus should be placed primarily on whether Congress intended to create a private right of action. <u>E.g.</u>, <u>Hofbauer</u>, 700 F.2d at 1200 (citing <u>Transamerica Mortgage Advisors, Inc. v. Lewis</u>, 444 U.S. 11, 23-24, 100 S. Ct. 242, 249 (1979)) (citation omitted); <u>Cruey</u>, 174 F. Supp. 2d at 528 (citations omitted). Moreover, since issuing its opinion in <u>Cort</u>, the Supreme Court has become progressively more reluctant to imply additional private causes of action based on federal statutes where Congress did not expressly provide for such actions. <u>Hofbauer</u>, 700 F.2d at 1200 (citing <u>Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1, 24-25, 101 S. Ct. 2615, 2628-29 (1981)) (citations omitted). The Court has warned that 'implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best.' <u>Till</u>, 653 F.2d at 160 (quoting <u>Touche Ross & Co. v. Redington</u>, 442 U.S. 560, 571, 99 S. Ct. 2479, 2486 (1979)).

---

[4] The four factors to consider include: (1) whether the plaintiff falls within the class of people specifically intended to benefit from the statute, (2) whether there is evidence of congressional intent to allow or disallow a private remedy, (3) whether a private cause of action would fit with the purposes of the statute, and (4) whether the private action is usually left to state law so that implying a federal remedy would be inappropriate. <u>Cort v. Ash</u>, 422 U.S. at 78, 95 S. Ct. at 2087-88.

Most courts have found that the key factor to consider, the legislative intent in creating the Act, directs against implying a private cause of action based on a violation of the Act.  See, e.g., Hofbauer, 700 F.2d at 1200-01; Till, 653 F.2d at 160-61; Cruey, 174 F. Supp. 2d at 528-32; Lehmann, 484 N.E.2d at 480-81. These cases mainly discuss the legislative intent against implying a federal private cause of action under the Act, but any insight into Congress's intent also applies to the analysis of whether Congress intended individuals to be allowed to bring private state law claims, especially because the state law claims at issue are based directly on alleged violations of the Act. Furthermore, several of the indicators of legislative intent touch on tenets of federalism and separation of powers.  Because those concerns apply equally well to the issue of whether to allow state courts to hear state law claims arising from a federal statute, indicators of legislative intent dealing with federalism and separation of powers are particularly applicable to this court's decision.

The Supreme Court has noted that "the language and focus of the statute, its legislative history, and its purpose . . . are [factors] traditionally relied upon in determining legislative intent."  Transamerica, 444 U.S. at 24, 100 S. Ct. at 249 (citations omitted).  An examination of the indicators of legislative intent behind the portions of the Act under which the violation at issue could have occurred reveals that Congress did not intend to allow a private cause of action for a violation of

13

the Act.  Section 4012a requires lenders to notify borrowers
whether their property is located in a flood zone and to require
flood insurance as needed before making or modifying loans, while
section 4104b authorizes and regulates flood hazard
determinations.  42 U.S.C. §§ 4012a, 4104b (2006).

First, the plain language of the two relevant sections
indicates Congress's intent not to allow private causes of action
based on violations of the Act.  The subsections of section 4104b
that regulate third-party flood zone determinations only address
the relationship between the lender and the third party and do
not mention the borrower, indicating a lack of intent to protect
the borrower.  See § 4104b(d-e).  In addition, subsection (e)
allows lenders to rely on third-party determinations, thereby
shielding lenders from liability for error.  § 4104b(e).
Therefore, Congress uses subsection (e) to expressly deny a cause
of action by a borrower against a lender, a party with whom the
borrower is in contractual privity, for an error made in the
flood hazard determination.  Cruey, 174 F. Supp. 2d at 529.  It
is hard to imagine that Congress would have expressly denied a
right of action between parties in privity but would have
intended for courts to imply an action by a borrower against a
third party with whom the borrower is not in privity.  Id.
Further, the legislative history of section 4104b indicates that
the lender's incentive to make sure the third-party determination
is correct is sufficient to protect the borrower's interest.  Id.
at 530 (citing H.R. Rep. No. 103-652, at § 528).  With adequate

14

protections for the borrower already in place, there is thus no reason to conclude that Congress intended an additional private remedy for borrowers. Id. While the plain language of 4012a(b) does place an indirect duty on lenders to notify borrowers and require insurance, Congress placed the direct responsibility for implementing the section on federal regulatory agencies. Till, 653 F.2d at 158. Therefore, any benefit borrowers derive from the section is indirect rather than the product of a private cause of action. Id.

Second, the purpose of the Act is to reduce the burden on the federal government to fund flood disaster relief. Id. at 159 (citing H.R. Rep. No. 90-1585 (1968), as reprinted in 1968 U.S.C.C.A.N. 2873, 2966-67) (noting that there is "need for a program which will make insurance against flood damage available . . . and reduce the mounting Federal expenditures for disaster relief assistance"). In demonstrating concern for the strain on federal resources, the overall purpose of the Act indicates that it seeks to protect not the borrowers but the lenders whose deposits are insured by federal agencies. Id. In addition, the specific purpose of section 4104b, the section authorizing and regulating third-party determinations, is "to facilitate compliance with the flood insurance purchase requirements of [the Act]." § 4104b(b). This purpose statement mentions nothing about protecting borrowers or resolving private disputes; instead, it shows that Congress was solely concerned with ensuring the lenders' compliance with the Act. Therefore,

15

examining the purpose behind the Act and relevant provisions further demonstrates that Congress did not intend for courts to imply a private cause of action for a violation of the Act.

Finally, the structure and focus of the Act indicate congressional intent not to allow private causes of action. The Act is a broad regulatory scheme designed to allow federal agencies to implement and enforce flood insurance and flood zone notice requirements. Hofbauer, 700 F.2d at 1201; Till, 653 F.2d at 160; Arvai v. First Fed. Sav. & Loan Ass'n, 539 F. Supp. 921, 924 (D.S.C. 1982), aff'd, 698 F.2d 683 (4th Cir. 1983). To ensure compliance with the Act, Congress has authorized enforcement mechanisms, including the issuance of cease and desist orders against lenders' officers, the imposition of administrative remedies, the termination of ill-advised practices, and the requirement of affirmative action to address violations. Till, 653 F.2d at 160 (citing 12 U.S.C. § 1464(d)). It is well-settled that "a pervasive remedial scheme provided by Congress is an indication there was no intent to provide an additional private remedy." Id. (citing Transamerica, 444 U.S. at 19, 100 S. Ct. at 247) (citations omitted). Therefore, because the Act establishes such a strong regulatory scheme allowing for agency enforcement, Congress most likely intended the scheme to be the exclusive remedy. Id. (citing Belluso v. Turner Commc'ns Corp., 633 F.2d 393, 397 (5th Cir. 1980)) (citation omitted).

16

In addition, Congress expressly provided for private remedies under some other sections of the laws dealing with flood insurance. See, e.g., 42 U.S.C. §§ 4053, 4072 (2006) (providing that flood insurance policyholders may sue in federal court upon the disallowance of their claim); 42 U.S.C. § 4104 (2006) (providing that private persons who believe a flood determination is inaccurate can appeal through the administrative process and then to federal court). The Supreme Court has refused to imply a private cause of action when other sections of an act expressly provide for such remedies, noting that 'when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly.' Hofbauer, 700 F.2d at 1201 (quoting Touche Ross & Co., 442 U.S. at 572, 99 S. Ct. at 2487). Therefore, because Congress expressly provided for private remedies in other sections of the flood insurance statutes, it most likely did not intend for courts to entertain a private cause of action under the sections pertaining to this case.

After having considered the indicators of Congress's intent, including plain language, legislative history, and statutory structure and purpose, it appears that Congress did not intend to allow a private right of action, whether a state or federal claim, for a violation of the flood zone determination and notification provisions of the Act.

Both state and federal courts have also held that the principles of separation of powers and federalism upon which this government was created weigh against allowing state law claims

17

arising out of violations of the Act.  See Lukosus, 89 Fed. Appx.
412 (affirming a Rule 12(b)(6) dismissal on facts similar to the
instant case after reviewing the district court's opinion
reasoning that all state courts to consider the issue have
rejected state law claims on federalism grounds); Callahan, 2006
U.S. Dist. LEXIS 51217, at *6-7; Mid-America Nat'l Bank of Chi.
v. First Sav. & Loan Ass'n of S. Holland, 515 N.E.2d 176, 180
(Ill. App. Ct. 1987); Lehmann, 484 N.E.2d at 481; R.B.J., 315
N.W.2d at 290.  Because this court must determine whether the
state judiciary would recognize a state law claim under a federal
legislative scheme, these principles are of utmost relevance to
the issues before this court.

    As discussed, the Act at issue is part of a complete
administrative scheme of enforcement, which indicates that the
additional use of a broad range of private remedies was not
intended.  Till, 653 F.2d at 160; Hofbauer, 700 F.2d at 1201;
Lehmann, 484 N.E.2d at 481.  Therefore, Congress chose to use an
administrative agency to balance the interests of lenders,
borrowers, and the government, and allowing courts to hear common
law claims under the Act might destroy this delicate balance.
See Lehmann, 484 N.E.2d at 481.  One state court noted that "[i]t
is not within the competence of the judiciary to amend these
comprehensive enforcement schemes by adding to them another
private remedy not authorized nor intended by Congress."  R.B.J.,
315 N.W.2d at 289 (citing Nw. Airlines, Inc. v. Transp. Workers
Union of Am., 451 U.S. 77, 94, 101 S. Ct. 1571, 1582 (1981)).

18

Allowing a private cause of action under state law where Congress had not intended a private right to exist would amount to "an unwarranted intrusion upon the legislative domain." Id. (citation omitted). In addition, the United States District Court for the Eastern District of North Carolina held in Peal that the plaintiff's state law claims were preempted by the Act, Peal, 212 F. Supp. 2d at 515-17, indicating that allowing a state law cause of action under the Act would not only upset the balance of powers among the branches but that it would also upset the balance between the federal and state governments. Therefore, principles of federalism and separation of powers dictate that not only should the state and federal judiciaries refrain from infringing upon the executive or legislative domain by recognizing claims Congress did not intend for them to hear, but state courts should likewise not interfere with a regulatory scheme established by the federal government.

Therefore, precedent, legislative intent, and separation of powers and federalism concerns strongly weigh against allowing a private cause of action, whether a federal or state claim, based on a violation of the Act. It is the opinion of this court that the Supreme Court of North Carolina would reach a similar conclusion and hold that North Carolina does not recognize private state law claims by a borrower based on a violation of the flood zone determination and notification provisions of the Act.

19

Nevertheless, Plaintiff argues that because North Carolina has not decided the issue, this court should follow the common law, which allows claims for negligence and breach of a third-party beneficiary contract. Plaintiff cites common law cases demonstrating that the contract between First American and USAA is in fact a third-party beneficiary contract and that as a result, First American owed a duty to Plaintiff. Whether Plaintiff could prove these allegations is irrelevant. In considering a 12(b)(6) motion, this court must take all Plaintiff's allegations as true and must not engage in examining the merits of the claims. Even assuming Plaintiff's allegations are true and that she set forth seemingly valid causes of action, this court nevertheless finds that North Carolina law would not recognize such claims as they relate to a violation of the Act. As such, it is not necessary for this court to reach the merits of Plaintiff's claims by deciding whether there was a valid third-party beneficiary contract or a duty owed to Plaintiff.

Therefore, this court finds that based on the weight of authority in favor of dismissing private causes of action arising from violations of the Act, the legislative intent behind the Act, and principles of separation of powers and federalism, North Carolina law would not recognize a private state law claim by a purchaser against a lender or a third-party determination company based on a violation of the Act. As such, this court will grant Defendant's Motion to Dismiss.

**IV. CONCLUSION**

An order and judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

This the 11th day of October 2006.

_____
United States District Judge

21